OPINION OF THE COURT
Howard A. Zeller, J.
This is a proceeding, pursuant to section 16-106 of the Election Law, to declare valid two affidavit emergency ballots and to direct the board of elections to include them in the final canvass of votes cast on November 6, 1979 for the office of Supervisor in the Town of Hamilton. On November 21, 1979 a canvass of the election results made by the board of elections showed 667 votes for Robert B. Palmiter and 666 votes *1052 for Stanley H. Roe. If the two affidavit emergency ballots are counted, Roe has 668 votes and Palmiter has 667 votes.
The two voters who cast the uncanvassed ballots registered by mail on September 17, 1979. There were blank spaces on the registration cards underneath printed headings concerning residence address. The printed headings and the answers inked in by each voter read:
STREET OR ROAD
9 Madison St.
CITY OR TOWN, ZIP CODE
Hamilton 13332
MAILING ADDRESS IF DIFFERENT
Box 372
VILLAGE
Earlville
The Village of Hamilton and the Village of Earlville are both located in the Town of Hamilton. The zip code for Earlville is 13332. Election District No. 2 embraces part of the Village of Hamilton; Election District No. 3 includes part of the Village of Earlville. The board of elections registered the two voters in Election District No. 2 (Village of Hamilton) whereas they actually resided in Election District No. 3 (Village of Earlville).
On election day the two voters went to the polling place in Election District No. 3 where there were 4 inspectors of election, 2 Democrats and 2 Republicans. When told they were not registered in that district, the two voters said they had registered by mail. The chairman of the election inspectors and one of the voters[1] conversed by phone with one of the election commissioners at the Madison County Office Building. Following the telephone conversation, the chairman handed each voter a pink paper ballot. The inspectors did not give the voters any instructions nor hand them any affidavit or envelope. The voters sat at the inspector’s table and marked their ballots. The chairman then said to them: "Don’t forget to sign your names on those, girls, because that’s the only way I’ll know whose they are.” Each voter then signed her name to the upper right-hand corner of the ballot and wrote her address underneath. Neither voter subscribed or swore to any affidavit. The ballots were then folded and placed in a large manila envelope. The next day in the lobby of the Madison County Office Building two of the election inspectors placed the ballots in envelopes entitled "affidavit by voter for WHOM NO REGISTRATION POLL RECORD CAN BE FOUND”. One Was then sealed; the other was left unsealed. The two envelopes *1053 with ballots enclosed, along with other election records, were then delivered to the board of elections.
The use of the two "pink ballots” was an attempt to vote affidavit emergency ballots pursuant to section 8-302 (subd 3, par [f]) of the Election Law, which reads:
"Whenever a voter presents himself and offers to cast a ballot, and the address at which he claims to live is in the election district in which he seeks to vote but no registration poll record can be found for him, he shall be permitted to vote only as hereinafter provided:
"1. He may present a court order requiring that he be permitted to vote * * * or
"2. He may request, swear to and subscribe an affidavit stating that he has duly registered to vote, the address in such election district from which he registered, that he remains a duly qualified voter in such election district, that his registration poll record appears to be lost or misplaced * * * Each such affidavit shall be printed on an envelope of the size and quality used for an absentee ballot, and shall contain an acknowledgment that the affiant understands that any false statement made therein is perjury punishable according to law. The voter’s name and the entries required shall then be entered without delay in the sixth section of the challenge report, with the notation that the voter has executed the affidavit hereinabove prescribed. The voter shall then be permitted to vote an emergency ballot provided for by this chapter. Such ballot shall thereupon be placed in the envelope containing his affidavit, and the envelope sealed and returned to the board of elections in the manner provided by this chapter for protested official ballots, including a statement of the number of such ballots.”
The affidavit emergency ballot provision of this section was first effective at the general election in 1976. Only one reported court proceeding involving this type of ballot has been found and it is of little help here. Matter of Giglia v Carlsen (55 AD2d 1018, mot for stay den 40 NY2d 1093) held the time limitation to review a challenged affidavit emergency ballot began to run, under former section 330 of the Election Law, from the "date of the determination challenged” and not from election day. The court found the proceeding timely and declared the affidavit emergency ballot should be counted if in fact the voter had registered.
The clear and plain legislative mandate of section 8-302 of *1054 the Election Law that the voter "swear to and subscribe an affidavit” was not followed. The two ballots were not placed in the proper envelopes at the polling place as required. Contrary to legislative prohibition the ballots contain markings other than cross marks or check marks. Nevertheless, Mr. Roe contends the two votes should be tabulated and the two voters should not be disenfranchised as the election inspectors committed errors and gave wrong, inadequate and misleading instructions to the two voters.
The Election Law contains many provisions which result in the invalidation of the choice of the voter even though the choice of the voter is clear. Some examples will suffice.
Section 6-132 of the Election Law requires designating petitions to be authenticated by a notary public or commissioner of deeds. In Matter of Russell v Board of Elections of Chautauqua County (64 AD2d 1007, affd 45 NY2d 800) two separate sheets of a designating petition for the position of Liberal Party candidate for Family Court Judge were invalidated on the grounds that they were authenticated by a town councilman and Town Justice. The court wrote (64 AD2d supra, at p 1007): "Given the unambiguous wording of the statute * * * it is clear that the Legislature intended to restrict the class of officials who are authorized to authenticate a nominating petition.” One Judge dissented stating the legislation should be liberally construed to afford the voters a full opportunity to exercise their franchise. The majority’s ruling kept the candidate’s name from the ballot.
In Matter of Homer v Board of Elections of County of Cortland (71 AD2d 970, mot for lv to app den 48 NY2d 601) there were 16 signatures on one sheet of a designating petition for a candidate seeking a place on the primary ballot of the Democratic Party for the office of county legislator in the September 11, 1979 primary election. The subscribing witness to the sheet had filed a change of enrollment from blank to Democrat in February, 1979. Section 5-304 of the Election Law provides a registered voter’s change of enrollment at such time shall not become effective until the first Tuesday following the next succeeding general election. It was held the sheet containing the 16 signatures was invalid because the subscribing witness was not a properly enrolled Democrat. The candidate lacked sufficient signers to get on the primary ballot through no fault of the 16 signers.
Former section 120 of the Election Law, dealing with absen *1055 tee ballots, in part provided: "instructions 1. Mark in pen having blue or black ink or a pencil having black lead.” Former section 202 of the Election Law entitled "Manner of Voting” provided: "The voter * * * shall * * * mark his ballot for voting, using a pen having blue or black ink or a pencil having black lead.” In Matter of Lorenzen v McAfee (76 Misc 2d 776) the court ruled that the use of red ink on an absentee ballot voided the ballot and resulted in a one-vote margin for a candidate for Town Justice of the Town of Arietta.
In Matter of DeSapio v Koch (14 NY2d 735) the Court of Appeals held that votes cast by persons who did not sign the registration poll records were invalid and their votes could not be counted.
Here, neither of the two voters was told by the election inspectors that she should swear to and sign the required affidavit before casting an affidavit emergency ballot. The two voters did not request the affidavit forms. Failure to subscribe and swear to the affidavit contravenes the Election Law. The Legislature did not decree that a voter would be relieved of the affidavit requirement if the election inspector did not inform the voter of it. In fact, the Legislature has placed the burden on the voter to "request, swear to and subscribe an affidavit” (Election Law, § 8-302, subd 3, par [f], cl 2) in the form prescribed. Failure of the voter to do so invalidates the ballot.
Section 9-209 of the Election Law provides for the canvassing of all affidavit emergency ballots by the board of elections and sets forth the notice provisions, right to watchers and challengers and other procedures to be followed. Section 9-209 (subd 2, par a) of the Election Law provides that upon assembling the board of elections shall consider each affidavit envelope and "shall reject any ballot not found sealed in the envelope in which it was placed at the polling place”. These two affidavit emergency ballots were not placed in proper envelopes at the polling place and the board of elections was required to reject them.
Section 9-112 of the Election Law states: "1. The whole ballot is void if the voter * * * (d) makes any mark thereon other than a cross X mark or a check / mark in a voting square”.[2] Subdivision 11 of section 17-130 of the Election Law *1056 provides a penalty may be assessed against a person who "Places any mark upon his ballot, or does any other act in connection with his ballot with the intent that it may be identified as the one voted by him”. (Of course, no one in this proceeding is suggesting that any such penalty be sought.)
In Matter of Pavlic v Haley (40 Misc 2d 975, affd 20 AD2d 592, affd 13 NY2d 1111) a voter obliterated by strikes with a ball point pen the name of one of the candidates for the office of county clerk. The same ballot was properly voted for the Democratic and Liberal candidate for the office of Supervisor of the Town of Duanesburg. The courts held that marks outside the voting square for county clerk rendered the whole ballot void resulting in a tie vote for the office of supervisor.
In Matter of De Santis v Pedone (61 AD2d 1136, affd 45 NY2d 799) the court held that a ballot containing check marks outside the voting square was invalid and held that another ballot containing the signature of the voter on the back of the ballot also was invalid and that neither could be counted in an election for the position of Alderman in the City of Rome which then was won by one vote.
The cases relied on by Mr. Roe are inapplicable or distinguishable. For instance, his counsel cites Matter of D’Addario v McNab (32 NY2d 84) for the proposition that the express will of the electors may not be defeated by the failure of officers to follow directions. However, the case holds that an election won by a 90% favorable vote for a proposition must be invalidated for the failure of the town clerk to publish and post notices as required.
A case involving mistakes of an election inspector is Matter of Flanagan v Flemming (169 Misc 646, revd 255 App Div 819, revd 279 NY 615). A voter told a primary election inspector that he could not write legibly in English except to sign his name, and requested assistance in voting. The voter had a sample ballot showing names of Republican nominees. The inspector administered an oath regarding the voter’s need for assistance, and then copied the names of the Republican nominees from the voter’s sample ballot onto the official ballot while seated at the inspector’s desk. Former section 202 of the Election Law restricted the situations where assistance could be given to a voter and, in part, provided assistance could be given only if an illiterate person had become entitled to vote on or before January 1, 1922, and if he had taken an oath at the time of registration attesting to his illiteracy. The voter *1057 had failed to meet these requirements. His one vote determined the outcome. Special Term invalidated the vote. The Appellate Division reversed and wrote (supra, p 820): "There were irregularities in connection with the assistance given to the voter; but it is unquestioned that the ballot, as cast, correctly represented the intention of the voter; in the absence of fraud or clear violation this should be given great weight. The voter should not be penalized because the election inspectors were delinquent in the performance of their duties.” The Court of Appeals reversed the Appellate Division and reinstated the order of Special Term holding the omissions were not mere irregularities and that the ballot was invalid.
In the case now before this court the fact that an election inspector instructed the voters to sign the "pink ballots” cannot validate what the Legislature clearly has declared "void”.
One of the most important privileges of citizenship is the right to vote and to have that vote counted. However, the courts are duty bound to require votes to be cast substantially in the manner prescribed by the Legislature and may not rewrite plain and unambiguous legislation. Mandates of the Legislature were disregarded in this case.
The two affidavit emergency ballots are invalid. The canvass made by the board of elections is confirmed. Stanley H. Roe has 666 votes. Robert B. Palmiter has 667 votes. The board of elections is directed to certify Robert B. Palmiter as duly elected Supervisor of the Town of Hamilton.

. This voter previously had served as election inspector in another district.

. Instruction No. 2 on the emergency ballots informs the voter to use a cross X mark or check / mark in the voting square. Instruction No. 6, in bold type, reads "make no other mark or writing whatsoever upon the ballot.”