[800 NYS2d 474]

In the Matter of DEFREESTVILLE AREA NEIGHBORHOODS ASSOCIATION, INC., et al., Respondents, v PAUL TAZBIR, as Supervisor of the Town of North Greenbush, et al., Appellants, et al., Respondents.

Third Department, August 25, 2005

**APPEARANCES OF COUNSEL**

*Linda A.M. Clemente,* North Greenbush, for Paul Tazbir, appellant.

*Lombardi, Reinhard, Walsh & Harrison P.C.*, Albany (*Mary Elizabeth Slevin* of counsel), for Thomas Gallogly and another, appellants.

*James R. Reid*, Troy, appellant pro se.

*Bond, Schoeneck & King P.L.L.C.*, Albany (*Robert H. Feller* of counsel) and *Hicks & Bailly*, Albany (*John P. Hicks* of counsel), for U.W. Marx, Inc. and another, appellants.

*Marc S. Gerstman*, Albany, for respondents.

**OPINION OF THE COURT**

CARPINELLO, J.

Petitioners commenced this combined CPLR article 78 proceeding and declaratory judgment action to challenge a determination of respondent Town Supervisor dismissing their petition to incorporate the Village of Defreestville.[1] Specifically, after holding public hearings and considering objections to the petition from various parties, the Town Supervisor found that the petition for incorporation was legally deficient because it did not set forth the boundaries of the proposed territory with "common certainty" (Village Law § 2-202 [1] [c] [1]) and did not include a "complete" list of the regular inhabitants of the proposed village (Village Law § 2-202 [1] [c] [2]). Supreme Court, in granting the application, decreed that the petition for incorporation complied with the requirements of the Village Law such that an election should proceed (7 Misc 3d 412 [2005]).

This appeal ensued by certain respondents, including Thomas Gallogly and John Gallogly, who own a parcel of property in the affected area which they wish to develop, United North Greenbush, Inc., an organization consisting of residents opposed to the incorporation of the proposed village, and the Town Supervisor (hereinafter collectively referred to as respondents). Of the numerous procedural and substantive issues raised by the respective respondents on appeal, we find that none has merit. Accordingly, Supreme Court's decision will be affirmed.

We turn first to the Galloglys' claim that petitioners failed to acquire personal jurisdiction over them such that this entire proceeding must be dismissed for failure to join a necessary party. It is undisputed that the Galloglys are named parties to this CPLR article 78 proceeding (*cf. Matter of Butler v Hayduk*, 37 NY2d 497 [1975]; *Matter of Cappellazzi v Toto*, 57 AD2d 599

---

1. The proposed village is currently situated within the Town of North Greenbush, Rensselaer County.

[1977], *affd* 41 NY2d 1050 [1977]). Service of the petition, however, was made by delivery of the papers to their attorney, who submitted written objections on their behalf to the Town Supervisor and who represented them at the public hearings. Specifically, the Galloglys' objections were submitted in a nine-page letter dated June 28, 2004 on letterhead of that attorney's firm. Attached to this letter was an affidavit signed by both Galloglys and sworn to by a notary public on June 11, 2004. This affidavit, however, was deficient in that it failed to set forth the address of either Gallogly as required under Village Law § 2-206 (3). Indeed, this particular statutory provision requires that "[a]ll written objections . . . *shall clearly state* the name and address of the objector" (Village Law § 2-206 [3] [emphasis added]).

By failing to comply with this specific requirement whereby petitioners would have been informed of the Galloglys' addresses for service, the Galloglys relieved petitioners of strict compliance with the personal service requirement of Village Law § 2-210 (4) (b).[2] Since the June 28, 2004 letter of objection clearly stated the attorney's address and because the affidavit included therewith did not bear the address of either Gallogly, we are satisfied that under these particular circumstances service upon the attorney was sufficient and, thus, the instant proceeding is jurisdictionally sound (*compare Matter of Fagelson v McGowan*, 301 AD2d 652 [2003], *lv denied* 100 NY2d 503 [2003]). As a final matter on the issue of jurisdiction, no party on appeal has standing to challenge the alleged improper service or joinder of respondent J. David Wos (*see NYCTL 1996-1 Trust v King*, 13 AD3d 429, 430 [2004]; *Home Sav. of Am. v Gkanios*, 233 AD2d 422, 423 [1996]).

■ Respondents next argue that a 47-acre parcel of land, known as the Pelton property, previously included in the proposed village but subsequently annexed from the Town of North Greenbush into the City of Rensselaer renders the petition invalid.[3] Pursuant to Village Law § 2-200 (1) and § 2-206 (1) (d), a proposed village territory may not include "part of a city." When the petition for incorporation was filed, however,

---

**2.** The attempt to cure this defect on July 14, 2004 was ineffective because the Galloglys' addresses were added to the "copy" of their affidavit, which was not re-signed or resworn, thus giving petitioners insufficient notice of the change.

**3.** The annexation concluded after the petition was filed and after the Town Supervisor rendered his decision in the matter.

the annexation had not occurred (*cf. Matter of Luria v Conklin*, 139 AD2d 650 [1988], *lv denied* 73 NY2d 704 [1989]) and, thus, the petition satisfied this particular criterion at that time. We simply reject the argument that the annexation creates a "defect" in the boundary description of the proposed village. The Pelton parcel has been carved out of the proposed village by operation of law, an event the incorporators could not control.

■ Next, our review of the petition satisfies us that it defines the geographic area of the proposed village with "common certainty" in compliance with Village Law § 2-202 (1) (c) (1). Pursuant to this provision, a metes and bounds description, a map or a combination thereof is "sufficient to identify the location and extent of [the] territory with common certainty" (Village Law § 2-202 [1] [c] [1]). Here, petitioners submitted a metes and bounds description and maps; thus, the area was described according to a form specified under the statute (*see Matter of Incorporation of Vil. of Airmont*, 144 AD2d 465 [1988], *lv denied* 73 NY2d 704 [1989]). Moreover, read in conjunction with the affidavit of the landscape architect/municipal planner[4] who created both, we are satisfied that the petition adequately describes the proposed geographic boundaries for the purposes of Village Law § 2-202 and any objection based on the alleged lack of common certainty should have been rejected. To this end, we are particularly unpersuaded by respondents' attempts to attack the sufficiency of the description of the proposed territory by questioning this landscape architect's credentials and license status (*see* n 4, *supra*).

■ Next, a petition for incorporation must contain "[a] list of the names and address[es] of the regular inhabitants of such territory" (Village Law § 2-202 [1] [c] [2]). Regular inhabitants are defined as "all persons residing in the territory proposed to be incorporated except such persons who themselves, or who are persons under the age of [18] years residing with persons who, maintain a residence outside such territory which is used as their address for purposes of voting" (Village Law § 2-200 [2]). Here, the petition contains an allegation that the territory contains a population of at least 500 regular inhabitants as required by Village Law § 2-202 (1) (b) (3) and this allegation has never been disputed. Moreover, it includes a list of the

---

**4.** Notably, this landscape architect is a former consultant for the Town of North Greenbush during which time period he created the town's official zoning map. According to this architect, the boundaries of the proposed village were established from an electronic copy of this map.

names and addresses of the regular inhabitants as separately required by Village Law § 2-202 (1) (c) (2). Our calculation of this list reveals that it contains 2,752 people represented to be "regular inhabitants" of the proposed village.

According to petitioners, this list was compiled in reliance on numerous sources of information since no one source of information could provide them a complete and accurate count. These sources included voter enrollment records in effect when the list was being created, town and school tax rolls and a commercial mailing list. Once they generated a final list that they believed to be as inclusive as possible based on public records then in existence, particularly voter registration records, they bound the petition and began gathering signatures. Once the petition was bound and signatures started to be collected, they made a conscious decision not to then edit or change any portion thereof lest they open themselves up to a violation of Village Law § 2-202 (1) (e) (2), which requires all signers to be familiar with the contents of the petition.

The Town Supervisor concluded that this list was not "complete" because it excluded approximately 240 people who are regular inhabitants and included approximately 103 persons who are no longer regular inhabitants for various reasons, including death. Even accepting these conclusions as accurate, we are nevertheless satisfied that petitioners substantiated their allegation that the proposed village contains a population of at least 500 regular inhabitants and sufficiently complied with the requirement that they attach a list of same.

In our view, compilation of this list can never be done with absolute precision since events, such as death and the movement of persons in and out of the proposed area, are bound to occur during the petition circulation process. Unlike other provisions of the Village Law and Election Law, which, for example, establish a list of registered voters eligible to participate in an election as of a certain date, the instant statutory process fails to set forth a temporal limitation and/or cutoff date by which the list is to be established. As noted in *Matter of Village of Hampton Bays* (40 Misc 2d 434 [1963]), "[c]ertainly a list that is absolutely complete and accurate would be impractical to obtain and this court has concluded that a list that is substantially complete complies with the statute" (*id.* at 436). Here, the record demonstrates a good faith effort on the part of petitioners to fully comply with all mandates of the statute, efforts which generated a list that was indeed substantially complete.

The objectors' complaints that certain people were improperly excluded and included for various reasons, while well taken, do not demonstrate wholesale errors in the list or raise concerns about the integrity of the incorporation process itself.

To the extent that cases from the Second Department can be read as subscribing to a more stringent standard in compiling this list, namely, a list free from any imperfection (*see e.g. Matter of Baker v Heaney*, 15 AD3d 577 [2005], *lv denied* 5 NY3d 702 [2005]; *Matter of Elevitch v Colello*, 168 AD2d 681 [1990], *lv denied* 77 NY2d 806 [1991]; *Matter of Luria v Conklin*, 139 AD2d 650 [1988], *supra*; *Matter of Incorporation of Vil. of Viola Hills*, 129 AD2d 579 [1987], *lv denied* 70 NY2d 602 [1987]), we simply disagree and decline to follow them. Nor will we attempt to create a bright-line percentage error rule in gauging compliance with this statutory requirement.[5] Rather, focusing on one purpose behind the need for a list of regular inhabitants, that is, to give a town supervisor a means to determine whether a proposed territory meets the minimum population requirement of 500 regular inhabitants (*see* Village Law § 2-200 [1]; § 2-202 [1] [b] [3]; § 2-206 [1] [f]), we find that the subject list clearly accomplished that goal. Furthermore, it is reflective of a good faith effort to establish a list of regular inhabitants of the proposed village which can never be "complete" from one day to the next.

■ Next, we address whether the objectors met their burden of disproving that "[20%] of the residents of such territory qualified to vote for town officers" signed the petition (Village Law § 2-202 [1] [a] [1]; *see* Village Law § 2-206 [1] [b]). Our review of the record reveals that there are 57[6] pages of petitions containing two to 15 signatures per page with a total of 629 signatures.[7] In their objections to the Town Supervisor, the Galloglys claimed that over 200 of these signatures must be disregarded while United North Greenbush claimed that 325 must be disregarded. Upon review of their respective objections, we are unpersuaded.

First, we decline to strike any signature alleged to be illegible. Numerous affidavits were submitted in response to this particu-

---

5. The Town Supervisor found that "a margin of error of 2% in the list of regular inhabitants has been held to require invalidation of the petition," citing to certain Second Department cases, and he found a 12% margin of error existed in the subject list. We do not fault the Town Supervisor for being influenced by Second Department precedent in the absence of our own.

6. This figure does not include page 13E of the petition as this page does not contain any signatures.

7. Petitioners claim this number is 623.

lar objection and the subscribing witnesses clarified the names of many signers allegedly providing an illegible signature. In any event, all addresses are clearly legible and, thus, we would not likely strike any signature on this ground even absent these affidavits. Next, the Galloglys' claim that some signatures were signed in pencil and therefore should be excluded. We find no such signature on any of the 57 pages. In any event, we again would not likely be persuaded that this factor alone would warrant rejection of any such signature.

Moreover, the fact that any signer to the petition was not *registered* to vote at the time he or she signed is of no consequence since a signer need only be "qualified" to vote under Village Law § 2-202 (1) (a) (1) (*see* Election Law §§ 5-100, 5-102; Village Law § 2-216). Clearly, there is a distinction between being qualified to vote and registered to vote (*see id.*; *cf. Matter of Larkin v Colello*, 131 Misc 2d 790 [1986]). The statute only requires the former status (*see* Village Law § 2-202 [1] [a] [1]). Therefore, United North Greenbush's objection to some 62 signatures and the Galloglys' objection to well over 140 signatures on this basis are unfounded. Furthermore, we have reviewed all allegations of fraud and/or forgery, particularly with respect to Suzanne Woodward, and are satisfied that no objector satisfactorily proved these allegations.

We will, however, eliminate those signatures that were not dated at all or that were dated after the subscribing witness signed the statement of witness (five signatures on pages 6F and/or 7F), those signatures where the signer acted as the subscribing witness for himself (three signatures on pages 1B, 1C and 7F) and those signatures which are duplicates (Julia Kelly and Lance Kramer signed twice and thus their second signatures on pages 5G and 9G, respectively, will be disregarded).[8] Moreover, even concluding that a subscribing witness's misstatement of the number of signatures on a page eliminates all such signatures on that page (*see generally Matter of Magee v Camp*, 253 AD2d 573 [1998]; *compare Matter of Etkin v Thalmann*, 287 AD2d 775 [2001]), this would only require elimination of 27 signatures (i.e., pages 6F and 1G). Taking into account the elimination of 34 total signatures, 595 valid signatures

---

8. Although Philip Restifo signed the petition on three occasions (he signed once on page 9H and twice on page 10H), two of his signatures were crossed off and initialed. Thus, the Galloglys did not prove that he provided a duplicate signature.

remain.[9] Thus, whether or not we factor in the errors in that list as established by the objectors, the statutory threshold of 20% is met.[10]

As a final matter, we conclude that the State Environmental Quality Review Act is not applicable to a village incorporation process. This process does not involve an agency action as that term is defined under ECL article 8 (*see* ECL 8-0105 [4], [5]; *see also* 6 NYCRR 617.2 [b]), since it does not commit the proposed village to any particular project, activity or definite course of future conduct (*compare Matter of City Council of City of Watervliet v Town Bd. of Town of Colonie*, 3 NY3d 508, 517-519 [2004]).

The parties' remaining contentions have been reviewed and rejected.

MERCURE, J.P., MUGGLIN, ROSE and LAHTINEN, JJ., concur.

Ordered that the judgment is affirmed, without costs.

---

**9.** The total number of eliminated signatures herein identified is 37. However, three signatures on page 6F have been eliminated for more than one reason. Thus, the total number of signatures actually eliminated is 34.

**10.** Although the statute refers to persons "qualified to vote" for purposes of determining whether the 20% requirement is met (Village Law § 2-202 [1] [a] [1]), we conclude that this term is synonymous with "regular inhabitants" (*see* Village Law § 2-200 [2]).