OPINION OF THE COURT
Christian F. Hummel, J.
*458 This is a special proceeding brought under Village Law § 2-224. Petitioner Doris McCarthy, a registered voter in the Town of Nassau, Rensselaer County, seeks to vacate the results of an election held on March 6, 2006 to determine the question of whether the Village of Dunham Hollow should be incorporated in that Town. Pursuant to a decision and order of this court dated May 16, 2006 an evidentiary hearing was conducted on July 11, 2006. Called as witnesses on behalf of petitioner were Doris McCarthy, Norman Young and Stephen Fisher, while Ed McDonough and Alexander F. Clement testified for respondents. Based upon the credible testimony adduced at the hearing, the court makes the following findings of fact and conclusions of law.
Findings of Fact
On March 6, 2006 the election in question took place at the Hoags Corners firehouse in the Town of Nassau. Present were four election inspectors chosen by the Town Clerk. Petitioner was one of these inspectors. Also in attendance were a number of poll watchers from among both the proponents and the opponents of the village incorporation. Two voting machines were set up, and the inspectors agreed to split the assignment of voters to machines alphabetically.
In order to determine which individuals were eligible to vote, Ed McDonough, the Commissioner of the Rensselaer County Board of Elections, had prepared a computer printout of the names of registered voters residing within the borders of the proposed village. The election inspectors and the poll watchers both had access to a number of copies of this list. No registration poll records or signature verification cards, however, were provided to any of the election inspectors or to the poll watchers.[1]
As prospective voters appeared at the firehouse, they were directed to an election inspector. Each prospective voter was asked to give his or her name; the lists were checked to verify that the name given appeared; and, if so, the voter was directed to a machine to cast a ballot and a line was then drawn through that voter’s name on the respective lists. None of the voters was *459 asked, to provide proof of identification, and none of the voters was asked to sign a signature verification card prior to casting a vote. Election inspectors and poll watchers had been informed by the Town Clerk that there would be no signature or identification requirement at this election. The town officials had erroneously determined that this was what Commissioner McDonough called an “outside” election, similar to a school board or fire district election, which did not require signature verification.
While the election itself proceeded smoothly, the hearing record suggests that there may have been occasional problems that arose. One witness testified that a particular woman cast a ballot in the election even though her mother, and not she herself, was the eligible voter. One witness testified that an individual who was told that his name did not appear on the list proceeded to enter one of the voting booths and cast a ballot notwithstanding. Aside from these isolated incidents, however, there is no evidence of any substantial misconduct or confusion.
Even though the district involved was a small one, none of the witnesses called at the hearing testified to having recognized more than one in five of the individuals who appeared and cast ballots that day. When the votes were eventually tallied, it was determined that there was a total of 286 votes cast, with 167 opposed to the incorporation, and 119 in favor.[2]
Conclusions of Law
There is no disagreement among the parties to this proceeding that this election, held pursuant to the Village Law, was mandated to follow the requirements of the Election Law. Indeed, Village Law § 2-220 (5) specifically states, “The provisions of the election law not inconsistent herewith shall apply to such election so far as the same are practicable.” There is also no disagreement that the voter identification procedures, including signature verification, set forth in Election Law § 8-304 applied to this election. Yet again, there is no disagreement that these statutory strictures were not followed on March 6, 2006. The only point of dispute in this case is whether the lack of signature identification procedures mandates vacatur of the election results. Petitioner contends that failure to have followed the statute invalidates the election per se; respondents *460 contend that, absent proof that the result of the election would have been different but for the violation, the result must stand. This court determines that the statutory and state constitutional violations presented here are of such a magnitude that vacatur of the result is compelled, even in the absence of evidence of actual harm.[3]
Article II, § 7 of the New York State Constitution provides:
“All elections by the citizens, except for such town officers as may by law be directed to be otherwise chosen, shall be by ballot, or by such other method as may be prescribed by law, provided that secrecy in voting be preserved. The legislature shall provide for identification of voters through their signatures in all cases where personal registration is required and shall also provide for the signatures, at the time of voting, of all persons voting in person by ballot or voting machine, whether or not they have registered in person, save only in cases of illiteracy or physical disability” (emphasis added).
This constitutional provision serves a basic, twofold purpose: it mandates the secrecy of the ballot while concurrently providing a safeguard against fraud through signature verification of voter identity. Prior to the adoption of this particular revision in 1939, the existing law only required signature verification for elections held within cities whose population exceeded 15,000 (Election Law former § 165). 2 Revised Record of the New York State Constitutional Convention of 1938 states (at 994), “There is no reason for omitting the safeguard of signature identification at the time of registration and voting in any place where personal registration is required.” The history of this amendment thus suggests that, even in election districts with smaller populations (such as is the case here), verification by signature comparison of the identity of voters was deemed of such importance as to warrant constitutional and not merely legislative stature.
Indeed, immediately after the adoption of this amendment but prior to the Legislature’s opportunity to enact the necessary *461 implementing laws,[4] the Attorney General considered signature verification mandatory: This section is “self-executing [and] signatures of all voters upon the day of any general, primary or special election, and signature of all voters at the time of registration in all cases of personal registration” are required (1939 Ops Atty Gen 226, 226). That the drafters of the State Constitution have seen fit to craft such a careful prescription for the conduct of elections and that the Executive Branch considered its directives immediate and mandatory suggest the level of importance attached to the requirement of signature identification. The complete disregard of this fundamental prerequisite to a valid election can therefore hardly be considered a trivial or inconsequential irregularity.
The cases disqualifying individual votes cast without signature verification[5] are numerous and consistent (see, e.g., Matter of DeSapio v Koch, 14 NY2d 735, 736 [1964]; Matter of Vallone v Power, 35 AD2d 678 [2d Dept 1970]; Matter of Roe v Palmer, 101 Misc 2d 1051, 1055 [Sup Ct, Madison County 1979, Zeller, J.]; see also, Matter of Hosley v Valder, 160 AD2d 1094, 1096 [3d Dept 1990] [absentee ballot disqualified because of signature “substantially different” from that found on ballot card]). Indeed, this court’s research discloses the absence of any case that has held that an individual vote should have been counted in the absence of signature verification.[6] Thus, if the votes cast in the instant case could be examined individually, they would all be subject to absolute disqualification. Any argument that would suggest that, since none of the votes cast were subject to signature verification, then all of them should be counted, *462 simply defies logic. The result of the election in the instant case must, for these reasons, be vacated.
Finally, this court must address the contention that the election results must not be set aside when there is no evidence that the result of the election would have been any different but for the irregularity conceded to have occurred here. The Court of Appeals has addressed this type of issue quite eloquently:
“While it is troubling to require a new election for irregularities without evidence of fraud or other intentional misconduct, ignoring such irregularities would undoubtedly create the likelihood that skillfully manipulated ‘irregularities’ would be used to mask corrupt practices. It is better to keep the standards high . . . than to increase the opportunities for fraud without possibility or likelihood of discovery” (Matter of Ippolito v Power, 22 NY2d 594, 598 [1968]).
As in Ippolito, there is no evidence of fraud or intentional misconduct demonstrated in the instant case. Nor is there proof that the outcome of the election was influenced by the lack of signature identification. Nonetheless, for this court to condone the absence of signature identification — indeed, the absence of any means of verifying the identities of the people who voted — in this case could open the door to future improprieties in local elections. While holding another election will undoubtedly entail inconvenience and additional expense, this is a small price to pay for the assurance of a just result in this particular election and in local elections yet to come.
In this context, the court must note its disagreement with the contention advanced by counsel for the individual respondents that “strict adherence to the provisions of the Village Law for incorporation of a village is not required” (letter reply brief of Mary Elizabeth Slevin, Esq., July 25, 2006, at l).[7] The two cases cited in support of this claim, Matter of Venne v Sanford (25 AD3d 1007 [3d Dept 2006])[8] and Matter of Defreestville Area Neighborhoods Assn., Inc. v Tazbir (23 AD3d 70 [3d Dept 2005]), both dealt with challenges to the sufficiency of petitions for vil *463 lage incorporation. Noting the virtual impossibility of literal compliance with the requirement of listing the names of all residents of a proposed village since, for example, some residents may relocate or die during the petition process, the Court stated, ‘‘[M]inor discrepancies in the lists of regular inhabitants and qualified voters may be tolerated where, as here, ‘the record demonstrates a good faith effort on the part of petitioners to fully comply with all mandates of the statute’ ” (Matter of Venne v Sanford, supra at 1009, quoting Matter of Defreestville Area Neighborhood Assn. v Tazbir, supra at 75). Far from being a judicial determination that the requirements of the Village Law have been relaxed in cases of proposed incorporations, these cases both mandate proof of good faith efforts at compliance with the strictures of the law. In the instant case, signature cards for the registered voters in the proposed village were physically present in the building in which the election was held. Nevertheless, no attempt at compliance with the constitutional and statutory mandate of signature identification was made. This can hardly be considered “a good faith effort ... to fully comply with all mandates of the statute.”
Moreover, counsel’s contention in her reply letter brief (at 3) that the Venne and Defreestville cases suggest that “the Third Department has determined that, under the Village Law, persons are authorized to vote in the Election if they are merely ‘regular inhabitants’ of the area of the proposed Village” is simply wrong. The two cases cited {supra) are addressed to the process of petitioning for incorporation, not the process of conducting an election on the issue. While the Village Law specifically allows “regular inhabitants” who may not be registered voters to sign the petition for incorporation (Village Law § 2-200 [2]), nothing in the law or its judicial interpretation has ever extended the right to vote in an incorporation election to anyone other than a registered voter. There is thus no basis for any claim that the strictures of the law have been relaxed in village incorporation cases.
For all of the above reasons, it is ordered, adjudged and decreed that the petition in this case is granted. The results of the election held on March 6, 2006 are vacated. A new election shall be held pursuant to Village Law § 2-230.

. It is worth noting that in the firehouse, the regular site of fire district elections, were kept specimen signature cards used in those elections. Even though the area which encompassed the proposed village was coterminous with the fire district, the specimen signature cards were not produced or made available to the election inspectors or poll watchers at the time of this election.

. These vote totals were not adduced at the hearing, but were provided in prior papers (see, May 16, 2006 decision and order at 3). The parties do not dispute the accuracy of these numbers.

. Contrary to the assertions of the individual respondents (letter brief dated July 18, 2006 at 3, U 12), this issue was brought before the court in a timely manner. Village Law § 2-224 provides a 10-day time period “after the filing of the original of the certificate of election” within which any qualified voter may commence a proceeding to challenge an election. This requirement was satisfied by petitioner. There is no provision in the law mandating that this challenge needs to have been filed prior to the count of votes, as the individual respondents suggest.

. Election Law § 8-304 is the legislation ultimately enacted pursuant to the constitutional mandate.

. Of course, the only situation in which a specific cast vote can be challenged for the lack of signature verification is when the ballot is cast on paper as an absentee or emergency ballot. There is no way to connect a machine-cast vote to a specific voter. This feature is designed to preserve the secrecy of the ballot, another constitutional requirement of article II, § 7.

. The 1938 case of Moritt v Cohen (255 App Div 804 [2d Dept 1938], affd 279 NY 617 [1938]), decided before the effective date of the constitutional amendment discussed above and implicitly overruled by DeSapio v Koch (supra), appears as a singular aberration. In Moritt, an official referee appointed to preside over an election dispute found that 27 voters had cast ballots without having first signed the registry book. The Appellate Division held that it was error for the trial court to have approved the referee’s discounting of 27 randomly drawn ballots in order to “cure” the Election Law violation. In affirming the result, the Court of Appeals did not give its opinion regarding the signature verification issue. Instead, it merely declared certain ballots void and others good without any reported analysis.

. Even though this letter brief was received by the court one day after the deadline for filing, and even though it raises new issues not properly included in a reply, this court has opted to consider this submission in order to allow all parties a full and fair opportunity to be heard.

. This is the decision and order affirming a judgment of this court in a CPLR article 78 proceeding in which the Nassau Town Supervisor’s decision to strike the incorporation petition in the instant case was annulled.