OPINION OF THE COURT
Richard D. Rosenbloom, J.
Webster Associates (referred to herein as petitioner) has commenced a proceeding pursuant to CPLR article 78 and a declaratory judgment action to challenge certain actions of the members of the Town Board of the Town of Webster (referred to herein as respondents). This is a motion by *534 respondents to dismiss the article 78 proceeding, for summary judgment in the declaratory judgment action, to consolidate the two matters and for a protective order as to disclosure requested by petitioner. Respondents-intervenors also move for the same relief. Petitioner cross-moves for summary judgment and to compel the requested disclosure.
Petitioner seeks to develop a shopping mall on a 93-acre site bounded by the eastbound frontage road of the Irondequoit-Wayne County Expressway on the north, Holt Road on the east, Ridge Road on the south and the Town Park-lands on the west. Immediately prior to the commencement of a meeting scheduled to consider petitioner’s application for rezoning, a protest petition was submitted to the town supervisor. The Town Attorney reviewed the petition and ruled that it complied with the provisions of section 265 of the Town Law, thereby invoking the requirement that any action of the town board be approved by three qxiarters of its members (four votes) rather than by a simple majority (three votes). A 3 to 2 vote in favor of the resolution declaring the intention to zone requested by petitioner was then determined by respondents to be insufficient to adopt the resolution.
Petitioner maintains that the protest petition was invalid as a matter of law and that the 3 to 2 vote was adequate to approve the resolution. Respondents contend that the town board’s declaration of intention to zone constitutes a legislative act and is therefore only reviewable in a declaratory judgment action. The decision of the Appellate Division, Fourth Department, in Todd Mart v Town Bd. of Town of Webster (49 AD2d 12), is dispositive of this preliminary issue. Since the town board’s declaration of intention to zone in this particular statutory scheme has been determined to be legislative in nature rather than administrative, respondents’ motions to dismiss the article 78 proceeding are granted.
Section 265 of the Town Law provides, in pertinent part, as follows: “Such regulations, restrictions and boundaries may from time to time be amended, supplemented, changed, modified or repealed by ordinance. In case, however, of a protest against such change signed by the owners *535 of twenty per centum or more, either of the area of the land included in such proposed change, or of that immediately adjacent extending one hundred feet therefrom or of that directly opposite thereto, extending one hundred feet, from the street frontage of such opposite land, such amendment shall not become effective except by the favorable vote of at least three-fourths of the members of the town board.”
Petitioner contends that a protest is not properly submitted at the intention to zone stage, arguing that this stage is not equivalent to the enactment, amendment, supplement, change, modification or repeal of an ordinance.
The Town of Webster’s zoning ordinance (art IV) provides for a six-step zoning procedure which can be summarized as follows: (1) planning board sketch plan review; (2) town board sketch plan review; (3) planning board review of preliminary development plan; (4) public hearing and town board intention to zone; (5) town board final site plan approval; (6) town board’s creation of the planned unit development (PUD). If the planning board approves the preliminary development plan, the town board must then hold a public hearing on a proposition to zone the applicant’s property for the proposed planned unit development. Thereafter, if the board determines the change to be in the public interest and in conformity with State, county and town laws, the board must adopt a resolution declaring its intention to zone the applicant’s property for the proposed PUD subject to the board’s approval of final plans and the developer’s satisfaction of any additional conditions that the board may require.
Stage 4 is more than the intermediate step that petitioner claims. Stage 4 is the critical point at which the board determines whether the applicant’s proposal will be approved and whether there will be a change of zones. The board’s declaration at this point is subject only to the later formality of final plan approval and thus is tantamount to a change of the zoning ordinance. The board has the option at the intention to zone stage of establishing further conditions. The board’s acts in the last two stages are purely ministerial to determine compliance with any conditions established at stage 4 and to grant final approval.
*536 Section 265 of the Town Law does not specify the time when a protest must be filed. An opinion of the New York State Comptroller has interpreted this statute as requiring that the protest be filed after the public hearing and at any time prior to the time when the town board votes on the proposed amendment (20 Opns St Comp, 1964, Opn No. 64-630, p 277). Based on the analysis of the zoning process in question and the Comptroller’s opinion, this court concludes that a protest is properly interposed at the intention to zone stage.
Turning now to the validity of the protest filed, petitioner claims that the land of respondent-intervenor Miscavage, one of the signers of the protest, does not meet any of the requirements of the statute and that the petition, therefore, falls short of the necessary 20% requirement. Clearly the Miscavage land is not included in the proposed change nor is it immediately adjacent thereto. The question to be determined is whether it falls within the third category of potential protesters, that is, being directly opposite the proposed change, extending 100 feet from the street frontage of such opposite land.
The Town Law must be strictly construed. (59 NY Jur, Towns, § 54.) Opposite is defined in Webster’s New Collegiate Dictionary (1979) as “across from and usually facing or on the same level with.” Directly is defined in Webster’s as “in a direct manner, immediately after” and in Black’s Law Dictionary [4th ed, 1968], p 547) as “without anything intervening”. The Miscavage property is unquestionably across from the proposed mall site and therefore qualifies as being opposite it. However, this analysis could apply as well to two tracts of land which might be miles apart. (Penny v City of Durham, 249 NC 596.) Taken literally, everything in the world is opposite something else. (Sunbury Steam Ferry & Tow Boat Co. v Grant, 2 Mon 287 [Pa Super].) However, the language of the statute qualifies the word “opposite” with the word “directly”. Directly opposite means immediately across from without anything intervening. Thus in Penny (supra), a buffer strip between the protester’s land and the property to be rezoned precluded the protester from qualifying as an owner of property directly opposite the subject property. (See, also, Montebello Land Co. v Novak Realty Co., 167 Md 185.)
*537 The purpose of a greater than majority vote is to provide additional protection to those property owners who would be most affected by a zoning change. (See Johnson v Township of Montville, 109 NJ Super 511.) The Miscavage land is separated from the proposed mall site by the eastbound frontage road of the expressway, a grassy median over 200-feet wide, an embankment and the westbound frontage road of the expressway. The western end of the land is approximately 415 feet from the mall site and the eastern end is approximately 500 feet away. In fact, the Miscavage land cannot be seen from parts of the mall site. Because of the substantial intervening area, the Miscavage land would not be significantly affected by a zoning change and does not fall within the category of property intended to be protected by section 265 of the Town Law. It therefore cannot logically be considered to be directly opposite the subject property.
Respondents contend that the remaining protesters, not counting Miscavage, satisfy the 20% requirement and constitute a valid protest. Petitioner controverts this claim and maintains that the remaining protesters fall short of the statutory requirement. This dispute as to the identification of qualifying properties on the remaining sides of the proposed site raises a genuine question of fact which cannot be determined on the basis of the competing written analyses. This issue is referred to Part I of this court for an immediate hearing.
The cross motions for summary judgment are denied without prejudice. The disclosure sought by petitioner is not material and necessary to the preliminary issue referred for a hearing. Since the determination of this issue may be dispositive of the entire dispute, the disclosure requested is stayed pending the outcome of the hearing in order to avoid unnecessary and unreasonable expense to all parties.