In the Matter of DEFREESTVILLE AREA NEIGHBORHOOD ASSOCIATION, INC., et al., Appellants-Respondents, v PLANNING

716

BOARD OF THE TOWN OF NORTH GREENBUSH et al., Appellants, and OAK HILL APARTMENTS, LLC, et al., Respondents-Appellants. [790 NYS2d 737]—

Carpinello, J. (1) Cross appeals from a judgment of the Supreme Court (Cannizzaro, J.), entered October 28, 2003 in Rensselaer County, which, inter alia, in a proceeding pursuant to CPLR article 78, granted respondents' motions to partially dismiss the petition, (2) appeal from an order of said court (Cannizzaro, J.), entered March 9, 2004 in Rensselaer County, which,

inter alia, denied petitioners' motion for leave to amend the petition, and (3) appeal from a judgment of said court (Canfield, J.), entered April 23, 2004 in Rensselaer County, which granted petitioners' application, in a proceeding pursuant to CPLR article 78, to, inter alia, annul a determination of respondent Zoning Board of Appeals of the Town of North Greenbush granting petitioners' request for an area variance.

The history of this case begins with an October 2002 application to respondent Town Board of the Town of North Greenbush by respondent Oak Hill Apartments, LLC for the construction of a luxury apartment complex on 20.62 acres of land in the Town of North Greenbush, Rensselaer County. This property is also located within the unincorporated hamlet of Defreestville. Ultimately, respondent Planning Board of the Town of North Greenbush, in compliance with the State Environmental Quality Review Act (hereinafter SEQRA) (see ECL art 8), issued a conditioned negative declaration (hereinafter CND) for the project and respondent Zoning Board of Appeals of the Town of North Greenbush approved a request for an area variance, thus prompting this litigation.

Petitioners are individuals who live in close proximity to the proposed complex, as well as a not-for-profit corporation comprised of approximately 250 Defreestville residents. We begin by acknowledging that petitioners have legitimate concerns about this project specifically, as well as the future growth and development of their hamlet generally, which are deserving of their personal and collaborative efforts. In the end, however, upon this Court's review of the voluminous records in these two consolidated appeals—totaling in excess of 5,000 pages—we are compelled to conclude that Supreme Court (Canfield, J.) erred in granting the petition to annul the actions taken by the Planning Board and Zoning Board.[1]

There are three prefatory matters which require discussion, namely, mootness, standing and allegations that the Town Board erred in excluding the subject property from the scope of a draft generic environmental impact statement (hereinafter GEIS) being prepared for potential rezoning of an area referred to as the Routes 4 and 43 corridor. First, since petitioners did not delay in commencing this proceeding and requested injunctive relief on more than one occasion to preserve the status quo, albeit unsuccessfully, this proceeding is not moot despite the apparent

---

1. Motions for a preliminary injunction preventing construction of the project were twice requested by petitioners and twice denied by Supreme Court (Cannizzaro, J.) before this matter was transferred to Supreme Court (Canfield, J.). Within 10 days of this transfer, the petition was granted.

substantial completion of the project (*see Matter of Citineighbors Coalition of Historic Carnegie Hill v New York City Landmarks Preserv. Commn.*, 2 NY3d 727, 729-730 [2004]; *Matter of Michalak v Zoning Bd. of Appeals of Town of Pomfret*, 286 AD2d 906 [2001]). As noted by the Court of Appeals, "[i]n a challenge such as this, relief remains at least theoretically available even after completion of the project. Simply put, structures . . . most often can be destroyed" (*Matter of Dreikhausen v Zoning Bd. of Appeals of City of Long Beach*, 98 NY2d 165, 172 [2002]).

Additionally, we are satisfied that petitioners have standing, both as individuals and as a neighborhood association, to challenge the various determinations of the Planning Board and Zoning Board concerning this project.[2] The individual petitioners each established that they live in close proximity to the project and that certain aspects of it, particularly traffic, would allegedly cause them individualized harm (*see Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead*, 69 NY2d 406, 413-414 [1987]; *Matter of Manupella v Troy City Zoning Bd. of Appeals*, 272 AD2d 761 [2000]; *see generally Matter of McGrath v Town Bd. of Town of N. Greenbush*, 254 AD2d 614 [1998], *lv denied* 93 NY2d 803 [1999]). Additionally, the neighborhood association, which includes the individual petitioners and which has as its stated purpose the protection of the quality of life and safety of residents of the hamlet, also established standing under the guidelines articulated in *Society of Plastics Indus. v County of Suffolk* (77 NY2d 761, 775-776 [1991]) and its progeny (*see e.g. New York State Assn. of Nurse Anesthetists v Novello*, 2 NY3d 207, 211 [2004]; *Matter of Center Sq. Assn. v City of Albany Bd. of Zoning Appeals*, 9 AD3d 651 [2004]). Petitioners, however, do not have standing to challenge a determination made by the Rensselaer County Industrial Development Agency vis-à-vis an application by Oak Hill for certain tax incentives (*see Kadish v Roosevelt Raceway Assoc.*, 183 AD2d 874 [1992]; *see also Matter of Colella v Board of Assessors of County of Nassau*, 95 NY2d 401 [2000]; *Society of Plastics Indus. v County of Suffolk, supra*; *Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, supra*; *Matter of Meehan v County of Westchester*, 3 AD3d 533 [2004], *lv denied* 2 NY3d 706 [2004]; *Beresford Apts. v City of New York*, 238 AD2d 218 [1997], *lv denied* 89 NY2d 815 [1997]). Thus, their motion to amend the petition to add this

---

2. Standing was denied to one individual petitioner (Brian Dwyer) and no petitioner or Dwyer takes issue with this decision on appeal. Accordingly, any issue regarding Dwyer's standing is deemed abandoned (*see Matter of Center Sq. Assn. v City of Albany Bd. of Zoning Appeals*, 9 AD3d 651 n [2004]).

agency as a party and assert additional causes of action was properly denied by Supreme Court (Cannizzaro, J.).[3]

Next, we are unable to conclude that Supreme Court (Cannizzaro, J.) erred in granting a preanswer motion to dismiss the second cause of action, premised on the Town Board's alleged failure to include the subject property within the scope of the GEIS. As of the commencement of this proceeding, the Town Board had not yet rendered a final determination on that ancillary matter and thus the second cause of action was properly dismissed.[4] Even though this cause of action had been dismissed, Supreme Court (Canfield, J.) granted the petition and found that the Town Board erred when it excluded the subject property from the GEIS in the absence of "a coherent explanation for its decision to do so." It further concluded that the Town Board improperly segmented the subject project and the GEIS. In our view, these findings violated the law of the case doctrine since the dispute over the *scope* of the GEIS itself had been previously eliminated from consideration by Supreme Court (Cannizzaro, J.) (*see People v Evans*, 94 NY2d 499, 502-504 [2000] [law of the case is a concept of regulating prejudgment rulings made by courts of coordinate jurisdiction in a single litigation]; *Degliuomini v Degliuomini*, 12 AD3d 634 [2004]).[5] Additionally, since this cause of action had been dismissed at an early stage in the litigation, the parties justifiably saw no need to further address this issue and, thus, the court's findings were made without the benefit of a fully developed record.

We turn now to the issue of whether the Planning Board

3. Petitioners separately appealed from the order denying their motion to amend. As an appeal as of right does not lie from a nonfinal order in a CPLR article 78 proceeding, the appeal from this order must be dismissed (*see* CPLR 5701 [b] [1]; *Matter of Baker v Town of Roxbury*, 220 AD2d 961, 962-963 [1995], *lv denied* 87 NY2d 807 [1996]). However, the appeal from the final judgment brings up for review the propriety of this order (*see Matter of Baker v Town of Roxbury, supra*).

4. Notably, petitioners never attempted to resurrect this cause of action by thereafter seeking to amend the petition to include these allegations after the GEIS was finally adopted. They have, however, allegedly commenced a separate CPLR article 78 proceeding challenging the GEIS.

5. While there is a separate argument that the Planning Board erred in declining requests to table the subject project pending completion of the GEIS, which would survive dismissal of the second cause of action, it is, in any event, unpersuasive. A review of the time line of events reveals that consideration of the instant project was well under way and nearing its final stages before the Town Board began preparation of the GEIS or issued a draft scope for it. Given this timeline, and because the subject project did not implicate rezoning concerns, we find no abuse of discretion in the Planning Board's decision to continue to proceed with its review of the project despite the Town Board's commitment to perform the GEIS.

violated SEQRA prior to issuing the CND. The project as originally proposed sought a change in zoning from its permitted use of Professional Business District (which allows multifamily residential development) to a Planned Development District, because at that time the project included the potential relocation of a nearby firehouse. An application was presented to the Town Board in October 2002, which referred it to the Planning Board for review and recommendation. The project was considered by the Planning Board on three separate occasions in the latter months of 2002. In December 2002, the Town hired independent consultants (i.e., an engineer and legal counsel) to assist its boards in conducting a SEQRA review of the matter.

In January 2003, the application was amended to seek approval for 252 units as zoned; that is, the Planned Development District request was withdrawn. At this time, Oak Hill submitted an application for site plan approval and evaluation in accordance with SEQRA to the Planning Board and also applied for an area variance to the Zoning Board concerning the project's density. As now amended, the project resulted in a density of 12.22 units per acre, well over the 4.36 units per acre permitted under the local ordinance. In early February 2003, the Planning Board designated itself as lead agency, thus assuming the responsibility for determining whether an environmental impact statement was required in connection with the project (see 6 NYCRR 617.2 [u]). In this capacity, the Planning Board consulted and solicited comments from approximately 20 agencies and conducted a coordinated SEQRA review with eight agencies. Resulting agency comments included concerns about storm water discharge, the potential presence of rare species on the site and the need for an archaeological survey.[6]

A joint hearing was conducted on February 24, 2003 by the Planning Board and Zoning Board and yet another Planning Board meeting was conducted on March 3, 2003. Public comments were heard at both meetings and written comments were also received by the Planning Board concerning various aspects of the project. Indeed, between February 21, 2003 and March 12, 2003 over 25 letters or e-mails were submitted to the Planning Board from residents, as well as a handful of nonresidents, concerning the project. At each step of the process, Oak Hill responded to all oral and written comments and concerns.

Within a few days of the March 3, 2003 meeting, at which density and increased traffic continued to be the primary concerns of the public, Oak Hill agreed to reduce the proposal

---

**6.** Indeed, a phased archaeological investigation was conducted on the site and reports were issued to the Planning Board.

from 252 apartment units to 220 units. This reduced density still resulted in a density in excess of 10 units per acre, thereby making it necessary to obtain an area variance for an additional 6.31 units per acre. Following this density reduction, comments and letters continued to be presented to the Planning Board. Thereafter, on March 27, 2003, the Planning Board classified the project as an unlisted action for SEQRA purposes, concluded that it will not have a significant environmental impact, thus obviating the need for an environmental impact statement (see 6 NYCRR 617.7 [a] [2]), and adopted a CND containing 12 conditions to mitigate all potential environmental impacts.[7] After receiving additional public comments on the CND and addressing each of the conditions point by point, a final CND was adopted by the Planning Board on May 12, 2003. The CND contained a detailed analysis of the identified relevant areas of environmental concern (see 6 NYCRR 617.7 [b] [3], [4]). Specifically, nine areas of concern that had been implicated during the review process, including impact on land, water, archaeological resources, aesthetics, growth and character of the neighborhood and traffic, were noted and discussed (see id.). Slight modifications were also made to several of the 12 conditions.

This extensive record reveals that the Planning Board, with the guidance and assistance of its own independent engineering firm and legal counsel, complied with the procedural and substantive requirements of SEQRA both in determining that the project would have no significant environmental impact and in issuing the CND. In reviewing its determination to issue a CND, this Court's review is strictly limited to "whether the [Planning Board] identified the relevant areas of environmental concern, took a 'hard look' at them, and made a 'reasoned elaboration' of the basis for its determination" (Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 417 [1986]; see Matter of New York City Coalition to End Lead Poisoning v Vallone, 100 NY2d 337, 348 [2003]). "While judicial review must be meaningful, the courts may not substitute their judgment for that of the agency for it is not their role to 'weigh the desirability of any action or [to] choose among alternatives' " (Akpan v Koch, 75 NY2d 561, 570 [1990], quoting Matter of Jackson v New York State Urban Dev. Corp., supra at 416; accord Matter of Merson v McNally, 90 NY2d 742, 752 [1997]).

---

7. While the project as originally submitted constituted a type I action under SEQRA as it involved more than 250 apartment units in a town with a population less than 150,000 (see 6 NYCRR 617.4 [b] [5] [iii]), its final scaled down version was appropriately determined to constitute an unlisted action (see id.; see also 6 NYCRR 617.2 [ak]).

Here, we are more than satisfied that the Planning Board identified the relevant areas of environmental concern, certainly took a hard look at them and set forth a reasoned elaboration for its determination to issue the CND (*see Matter of Chemical Specialties Mfrs. Assn. v Jorling*, 85 NY2d 382, 397 [1995]; *Matter of Jackson v New York State Urban Dev. Corp., supra; see also Matter of Incorporated Vil. of Poquott v Cahill*, 11 AD3d 536 [2004]; *Matter of Cathedral Church of St. John the Divine v Dormitory Auth. of State of N.Y.*, 224 AD2d 95 [1996], *lv denied* 89 NY2d 802 [1996]).

In fact, numerous detailed documents were presented to the Planning Board on the project, including original and revised site plans, a comprehensive traffic impact report, as well as a supplemental traffic impact report, a wetland delineation report, original and revised long environmental assessment forms, applications for an area variance, original and amended project narratives, detailed engineering reports, an archaeological assessment, a geotechnical study, a housing market study, excerpts from a fiscal impact analysis guidebook concerning projections of school population attributable to new development and multiple written responses by Oak Hill to agency and public concerns that arose. Although many areas of environmental concern were identified and addressed by the Planning Board, such as wetlands, archaeological resources and rare species, the predominate concerns raised throughout the process were traffic and the impact the project would have on the growth and character of the neighborhood, particularly given its density.

With respect to traffic, a traffic study prepared on November 21, 2002, at a time when the project design consisted of 272 units, concluded that there is adequate capacity in the surrounding infrastructure to absorb all traffic generated by the project without degrading existing levels of service. While this study was called into question by petitioners, each comment or concern was duly responded to by Oak Hill. Moreover, this traffic impact study was never actually refuted with competent proof. More importantly, the Department of Transportation indicated in late January 2003 that it had reviewed the study and agreed that no offsite action was necessary to mitigate the impact of the traffic generated by the project.

With respect to the growth and character of the neighborhood, the record confirms the Planning Board's findings that the project is situate within a zone that permits multifamily housing, as well as other more intense uses such as office space. Moreover, with the exception of density, the project complied with all other requirements for site plan approval. As to density,

the Planning Board noted, and the record confirms, that the reduced density of 220 units is less than that found in most other neighboring communities. The Planning Board further noted that another apartment complex, as well as a number of commercial establishments, are within the immediate vicinity of the project. Additionally, evidence was presented to the Planning Board that the project would only minimally affect the local school districts in terms of new students. In short, the Planning Board did not give short shrift to any matter, particularly traffic and the effect of the project on the neighborhood. Rather, our review of the record, particularly the minutes of the various meetings of the Planning Board, as well as the CND itself, satisfies us that there was nothing haphazard about its review of this application.[8] The record simply does not support Supreme Court's finding that the issuance of a CND was a "foregone conclusion rather than the result of careful study."

Similarly, our review of the record discloses no bias or predetermination on the part of the Planning Board against performing an environmental impact statement.[9] To this end, we note that no petitioner nor their attorney ever asserted at any point in this process that any Town entity or voting board member was biased against performing an environmental impact statement or that any and all modifications to the project were for the sole nefarious purpose of avoiding an environmental impact statement. To the contrary, the record reveals that the reduction of the number of units from 252 to 220 was the result of public comments and pressure about density and traffic and constituted a "legitimate maturation of [the] development project in accordance with the goals of environmental regulation" (*Matter of Merson v McNally*, 90 NY2d 742, 750 [1997], *supra*; *see Matter of Friends of Port Chester Parks v Logan*, 305 AD2d 676, 677 [2003]). In sum, the project was modified in an open manner with access and input permitted by all interested parties.

We turn next to the Zoning Board's decision to grant an area variance. As recently reiterated by the Court of Appeals, "local

---

**8.** Notably, one Planning Board member stated at the March 27, 2003 special meeting on the project that "[t]his is not going to be an easy decision for anyone sitting here tonight. And that's based on community character because we're all part of this community."

**9.** To the extent that Supreme Court found the Town's alleged bias to be supported by "the inexplicable decision to carve this large parcel of commercial property out of the properties that would be studied as part of the GEIS," we again note that the precise issue of the scope of the GEIS was no longer extant at that point in the litigation and thus it was not a proper indicator of bias.

zoning boards have broad discretion in considering applications for area variances and the judicial function in reviewing such decisions is a limited one. Courts may set aside a zoning board determination only where the record reveals that the board acted illegally or arbitrarily, or abused its discretion, or that it merely succumbed to generalized community pressure" (*Pecoraro v Board of Appeals of Town of Hempstead*, 2 NY3d 608, 613 [2004] [citations omitted]).[10] Moreover, "[a] determination of a zoning board should be sustained on judicial review if it has a rational basis and is supported by substantial evidence" (*id.* at 613). Here, giving due deference to the broad discretion of the Zoning Board, we are unable to conclude that granting the area variance was either an abuse of discretion or irrational under the circumstances.

The Zoning Board, again with the assistance of independent consultants, adhered to the statutory criterion outlined under Town Law § 267-b, which required it to engage in a balancing test, weighing the benefit to Oak Hill against "the detriment to the health, safety and welfare of the neighborhood or community" (Town Law § 267-b [3] [b]) and "made a well-reasoned decision based on a full consideration of the evidence before it and its members personal familiarity with the project site and surrounding areas" (*Matter of Oates v Village of Watkins Glen*, 290 AD2d 758, 762 [2002]). At a May 14, 2003 public hearing, traffic and density were again primary concerns and these issues were fully discussed by the Zoning Board members at that time and reflected in the Zoning Board's detailed written decision.[11] In granting the area variance despite the increased population density and the fact that Oak Hill's difficulty was self created,[12] the Zoning Board noted that two apartment complexes in the vicinity of the project have similar population densities and that the instant project is situate in a neighborhood which contains a mixture of commercial, multifamily and residential uses.

The Zoning Board further noted that the average population density of similar apartment complexes in the Capital District is

---

**10.** The rationale behind limiting judicial review in these matters, namely, that zoning decisions should be made by representatives from the local community who typically possess familiarity with local conditions necessary to make sensitive planning decisions (*see Matter of Cowan v Kern*, 41 NY2d 591, 599 [1977]), is particularly apt in this case.

**11.** Notably, one Zoning Board member stated on the record that "[m]y decision is going to be very hard. One of the hardest I've made—since 1985."

**12.** Under the express terms of the statute, a self created difficulty "shall not necessarily preclude the granting of the area variance" (Town Law § 267-b [3] [b]).

12 units per acre. With respect to traffic, the Zoning Board relied upon the traffic impact study which had found no adverse impact and which had been prepared for the project as originally envisioned with 272 units. Consideration was also given to the adequate green, recreation and parking space for the project despite the substantial density variation. Moreover, at the public hearing and in its decision, the numerous positive aspects of the project were noted by the Zoning Board, including the construction of a new municipal water storage tower, extension of water piping to surrounding residents at Oak Hill's expense, the presence of an otherwise unavailable housing option in the Town (i.e., luxury apartments), the Town's receipt of fees in excess of $130,000 and an increased tax base. Thus, we find that "the record does not indicate that the [Z]oning [B]oard acted in a manner that was in any way arbitrary, unreasonable, irrational, or indicative of bad faith. Its decision, therefore, should not have been disturbed" (*Matter of Cowan v Kern, supra* at 599).

To the extent not otherwise discussed, all other issues have been reviewed and rejected as being without merit.

Mercure, J.P., Crew III, Spain and Kane, JJ., concur. Ordered that the judgment entered October 28, 2003 is affirmed, without costs. Ordered that the appeal from the order entered March 9, 2004 is dismissed, without costs. Ordered that the judgment entered April 23, 2004 is reversed, on the law and the facts, without costs, and petition dismissed.