■ In the Matter of JOHN L. EADIE et al., Respondents, v TOWN BOARD OF THE TOWN OF NORTH GREENBUSH et al., Appellants. [803 NYS2d 262]—

Carpinello, J. Appeal from a judgment of the Supreme Court (Canfield, J.), entered July 26, 2005 in Rensselaer County, which granted petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to declare an amendment to the zoning code of the Town of North Greenbush null and void.

A trilogy of cases previously before this Court provide a detailed factual history identifying the instant parties, as well as outlining the hotly-contested dispute over commercial development in the vicinity of Routes 4 and 43 in the Town of North Greenbush, Rensselaer County (see Matter of Defreestville Area Neighborhood Assn., Inc. v Tazbir, 23 AD3d 70 [2005], lv denied 5 NY3d 711 [2005]; Matter of Defreestville Area Neighborhood Assn., Inc. v Planning Bd. of Town of N. Greenbush, 16 AD3d 715 [2005]; Matter of Defreestville Area Neighborhoods Assn. v Town Bd. of Town of N. Greenbush, 299 AD2d 631 [2002]). The instant dispute centers around a generic environmental impact statement (hereinafter GEIS) prepared by respondent Town Board of the Town of North Greenbush pursuant to the State Environmental Quality Review Act (hereinafter SEQRA) for potential rezoning of the subject Routes 4 and 43 corridor.

In the course of the GEIS process, the Town Board hired an engineering firm to consult with its preparation, named itself lead agency, issued a positive declaration, prepared draft and final scoping documents outlining the area to be studied and ultimately filed a draft GEIS on September 25, 2003. As relevant to the disputed issues on appeal, the draft GEIS encompassed a proposed zone change for a parcel of property jointly owned by respondents Thomas Gallogly and John Gallogly on which they proposed to build a large shopping center.[1] Specifically, it recommended rezoning the entire Gallogly parcel from professional business and residential (see n 1, supra) to "planned commercial," thereby permitting development for, among other uses, commercial retail. The proposed zoning changes outlined in the draft GEIS contemplated the use of design guidelines which placed certain restrictions on retail development and mandated a buffer of at least 200 feet between the eastern border of the Galloglys' parcel and the adjacent residential neighborhood. Under these proposed design guidelines, construction was prohibited within this buffer, including a prohibition on parking or roadways.

During public comments on the draft GEIS, certain residents requested that the original buffer of residential zoning between the eastern portion of the Galloglys' property and the adjacent neighborhood be maintained. As a result, the Town Board adopted a final GEIS implementing these recommendations. Specifically, the final GEIS recommended rezoning only a portion of the Galloglys' property to planned commercial and leaving its eastern outer boundary zoned in concentric bands of professional business and residential zones. These two retained zones left a "buffer zone" of between 200 and 400 feet between the rezoned portion of the parcel and the residential properties to its east.[2]

On April 29, 2004, the Town Board adopted and filed a notice of completion of findings statement and a findings statement pursuant to SEQRA (see ECL art 8; 6 NYCRR part 617) in which

---

**1.** Between 1971 and 1990, commercial retail was a permitted use on this parcel. It was rezoned in 1990 to "professional business district" and "residential single family" as part of an interim zoning plan awaiting finalization of plans to construct a new exit ramp off Interstate 90. This exit was completed in 1996.

**2.** The final GEIS thus eliminated the necessity for the proposed 200-foot buffer in the draft GEIS. According to the Town, its consultants unsuccessfully attempted to convince the residents that the buffer under the draft GEIS, which precluded any construction within that zone, was more protective of their interests. However, "[t]he residents were not convinced and at their insistence the existing zoning for some 400 feet was maintained."

it was noted that the "[GEIS] process has been completed and accepted by the Town Board on April 28, 2004." Thereafter, on May 4, 2004, the Town Board held a public hearing to consider enacting a local law to rezone the subject corridor as recommended in the final GEIS. At that hearing, the Town Board received a protest petition pursuant to Town Law § 265 (1) (b) seeking to require that any action with respect to the rezoning of the Gallogly property be approved by three fourths of its members (four votes) rather than a simple majority (three votes). Finding that the petition was insufficient to force such a vote, the Town Board enacted a local law on May 13, 2004 by a vote of three to two. On September 10, 2004, petitioners commenced the instant proceeding challenging the Town Board's compliance with SEQRA during the GEIS process, as well as its rejection of the protest petition. At issue on this appeal is a judgment of Supreme Court granting the petition and invalidating the local law on the ground that the Town Board improperly rejected the protest petition (9 Misc 2d 599 [2005]). We now reverse.

First, we find that petitioners' SEQRA challenges should have been dismissed as untimely. A four-month statute of limitations is applicable to allegations of SEQRA violations (*see* CPLR 217 [1]). Moreover, an agency's action is final for statute of limitations purposes "when the decisionmaker arrives at a 'definitive position on the issue that inflicts an actual, concrete injury'" (*Stop-The-Barge v Cahill*, 1 NY3d 218, 223 [2003], quoting *Matter of Essex County v Zagata*, 91 NY2d 447, 453 [1998]). Here, we find that the statute of limitations began to run, at the very latest, on April 29, 2004 when the Town Board adopted the final GEIS and filed its notice of completion of findings statement and findings statement, for it is by this date that the Town Board reached a final determination regarding its SEQRA review for the GEIS (*see Stop-The-Barge v Cahill, supra*; *Matter of McNeill v Town Bd. of Town of Ithaca*, 260 AD2d 829, 830 [1999], *lv denied* 93 NY2d 812 [1999]; *Matter of Monteiro v Town of Colonie*, 158 AD2d 246 [1990]).[3] This proceeding, commenced on September 10, 2004, was therefore untimely insofar

---

**3.** In their second through fifth causes of action, respectively, petitioners allege (1) improper segmentation of an action on a town-wide moratorium from the rezoning action, (2) improper segmentation of the Oak Hill project from the scope of the GEIS, (3) the failure to require a supplemental environmental impact statement, and (4) the failure to mitigate impacts to the community character and traffic. As tacitly conceded by petitioners, the second cause of action is moot since the town-wide moratorium has expired. The third cause of action is barred under res judicata given this Court's rejection of the claim in *Matter of Defreestville Area Neighborhood Assn., Inc. v*

as the SEQRA challenges are concerned (*see id.*). Furthermore, we are unpersuaded that *Matter of Save the Pine Bush v City of Albany* (70 NY2d 193 [1987]), which predates the decision in *Stop-The-Barge*, compels a different conclusion.

Next, we also find that Supreme Court erred when it invalidated the Town Board's majority vote approving the subject local law. Town Law § 265 (1) (b) provides that a proposed zoning change requires the approval of at least three fourths of the members of a town board when a protest against such change is signed by "the owners of twenty percent or more of the area of the land immediately adjacent to that land included in such proposed change, extending 100 feet therefrom." Here, the protest petitioners do not live within 100 feet of the rezoned portion of the Galloglys' property. Supreme Court acknowledged that "most [opponents of rezoning] are more than 100 feet away from the purported rezoning boundary." (9 Misc 2d at 603.) Notwithstanding, Supreme Court found Town Law § 265 (1) to be unclear as it relates to buffer zones and further noted that "there is the ring of abutting landowners who are seriously affected by the rezoning and vehemently oppose [it]." (9 Misc 2d at 604.) Supreme Court also found that the statute's "100 foot limit was not intended to disenfranchise property owners outside the 100 foot border." (9 Misc 2d at 608.) We simply cannot agree with this analysis since the provisions of the statute are clear and unambiguous, namely, that the class of owners necessary to force a "supermajority" must live *"immediately* adjacent" to the rezoned property, that is, within 100 feet (Town Law § 265 [1] [b] [emphasis added]).

As aptly noted in *Matter of Hittl v Buckhout* (13 Misc 2d 230 [1958]), *affd* 10 AD2d 719 [1960]), a case interpreting an analogous provision of the Village Law, " '[a] statute must be read and given effect as it is written by the Legislature, not as the court may think it should or would have been written if the Legislature had envisioned all the problems and complications which may arise in the course of its administration' " (*id.* at 232-233, quoting *Lawrence Constr. Corp. v State of New York*, 293 NY 634, 639 [1944]).[4] There can be no doubt that petitioners' properties are separated from the rezoned portion of the subject premises by a strip of land that is greater than 100 feet

---

*Planning Bd. of Town of N. Greenbush* (16 AD3d 715 [2005], *supra*). Even if the fourth and fifth causes of action were not barred by the statute of limitations, we have reviewed petitioners' contentions with respect to both claims and find them unpersuasive.

4. While the legislative history provides little guidance on the issue of "buffer zones" per se, it is clear that the Legislature believed that property owners beyond 100 feet from a rezoned parcel (itself a "buffer" zone) would

wide at all points. This strip is divided into two concentric zones of professional business and residential, which zones were not changed from the prior zoning in the rezoning process.

To the extent that petitioners suggest that this "buffer" was artificially created in an attempt to block their protest petition, we note that the draft GEIS did not include this particular buffer with these retained zoning designations (although it did include another type of buffer). To the contrary, it was ultimately recommended in the final GEIS as a direct response to the public comments specifically requesting it. More importantly, we are satisfied that the creation of a buffer zone, such as the one here, is a valid means by which to avoid the triggering of the supermajority requirement under Town Law § 265 (1) (b) (see *Ryan Homes, Inc. v Town Bd. of Town of Mendon*, 7 Misc 3d 709, 712-713 [2005]; *see generally Webster Assoc. v Town of Webster*, 119 Misc 2d 533, 537 [1983]). Numerous other state courts have considered the issue and have similarly concluded that buffer zones do prevent the application of supermajority voting statutes (see *Schwarz v City of Glendale*, 950 P2d 167, 170-171 [1997]; *Pfaff v City of Lakewood*, 712 P2d 1041, 1043 [1985]; *Midway Protective League v City of Dallas*, 552 SW2d 170, 174 [1977]; *St. Bede's Episcopal Church v City of Santa Fe*, 85 NM 109, 509 P2d 876, 877 [1973]; *Rodgers v Village of Menomonee Falls*, 201 NW2d 29, 33 [1972]; *Heaton v City of Charlotte*, 178 SE2d 352, 364-366 [1971]; *but see Herrington v Peoria County*, 11 Ill App 3d 7, 295 NE2d 729, 731 [1973]). Since petitioners do not fall within the plain and clear language of Town Law § 265 (1) (b), it was error for Supreme Court to invalidate the Town Board's majority vote approving the subject local law.

Given these findings, we need not reach any other issue on appeal.

Cardona, P.J., Peters, Spain and Kane, JJ., concur. Ordered that the judgment is reversed, on the law, without costs, and petition dismissed. [*See* 9 Misc 3d 599.]

---

be adequately protected by the normal process in which a simple majority is required.