Devine, J.
 

 Appeal from a judgment of the Supreme Court (Zwack, J.), entered May 24, 2016 in Albany County, which, among other things, in two combined proceedings pursuant to CPLR article 78 and actions for declaratory judgment, granted respondents’ motions to dismiss the amended petition/complaint in proceeding No. 2.
 

 Respondent Village of Kiryas Joel is located in Orange County and uses several wells for its municipal water supply. Kiryas Joel has been building, in the face of legal challenges, a 13-mile long pipeline that would allow it to tap into an aqueduct owned and operated by the City of New York for additional water (see Administrative Code of City of NY § 24-360; Matter of County of Orange v Village of Kiryas Joel, 44 AD3d 765 [2007]; see also Matter of Town of Woodbury v County of Orange, 114 AD3d 951, 952-953 [2014], lv denied 24 NY3d 903 [2014]). Authorization to withdraw water from the aqueduct will not be granted unless Kiryas Joel demonstrates, among other things, that it has “an adequate backup water supply source” in the event water from the aqueduct is unavailable.
 

 Kiryas Joel acquired property in Mountainville, Town of Cornwall, Orange County that was suitable for a needed pump station along the pipeline route and provided access to a principal aquifer with “abundant potential water supply” (State Dept of Envtl Conservation, Division of Water Technical and Operational Guidance Series [2.1.3]: Primary and Principal Aquifer Determinations at 2 [Oct. 23, 1990], available at http:// www.dec.ny.gov/docs/water_pdf/togs213.pdf [accessed Oct. 20, 2017]). Following favorable hydrogeological testing, Kiryas Joel applied to respondent Department of Environmental Conservation (hereinafter DEC) for a permit to develop a well field at the Mountainville site and withdraw water from the aquifer. Respondent Village of Kiryas Joel Board of Trustees (hereinafter Village Board), a respondent in proceeding No. 1, then assumed lead agency status for the review of the well drilling conducted under the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]). The Village Board ultimately made a negative declaration under SEQRA, finding no significant adverse environmental impact flowing from the well field development, and a challenge to that determination was dismissed by Supreme Court (Lefkowitz, J.) in 2014.
 

 The water supply permit application was reviewed by DEC while the SEQRA process and challenge to it was ongoing, and DEC issued a draft permit in 2013 and conducted a legislative hearing to consider public comment. In 2015, DEC issued a final permit that consolidated all of Kiryas Joel’s prior supply permits and allowed the monitored withdrawal of up to 612,000 gallons of water a day from a well at the Mountainville site. These hybrid CPLR article 78 proceedings and declaratory judgment actions followed.
 

 Petitioners in proceeding No. 1 sought relief including annulment of the water withdrawal permit, a declaration that the Village Board’s SEQRA determination was void and an injunction barring the permitted water withdrawal from the Mounta-inville site. Petitioners in proceeding No. 2 sought similar relief. A stipulation subsequently joined the two proceedings and the parties agreed to rely upon a single record and filing schedule.
 

 DEC and respondent Acting Commissioner of Environmental Conservation served an answer in proceeding No. 1 that raised several objections in point of law, including that petitioners lacked standing to commence it. DEC moved to dismiss proceeding No. 2 on various grounds, including standing, and the other respondents moved to dismiss both proceedings. Further motion practice ensued that included a cross motion by the proceeding No. 1 petitioners for summary judgment. Supreme Court thereafter issued a judgment holding that only petitioners Village of Woodbury, Town of Woodbury, Village of Cornwall-on-Hudson and Town of Cornwall in proceeding No. 1 (hereinafter the municipalities) had standing to bring suit. As for them, Supreme Court noted that the challenges to the SEQRA determination were barred by res judicata in some cases and untimely in all, as well as that the claims relating to the grant of the water withdrawal permit were belied by “overwhelming documentary evidence.” Supreme Court accordingly dismissed the amended petitions/ complaints in their entirety, prompting these appeals by all petitioners in proceeding No. 1 and petitioners Storm King Art Center and Black Rock Forest Consortium in proceeding No. 2.
 
 [1]
 

 The issue of standing having been raised, petitioners were obliged to “establish [ ] both an injury-in-fact and that the asserted injury is within the zone of interests sought to be protected by the statute alleged to have been violated” (Matter of Association for a Better Long Is., Inc. v New York State Dept. of Envtl. Conservation, 23 NY3d 1, 6 [2014]; see Matter of Clean Water Advocates of N.Y., Inc. v New York State Dept. of Envtl. Conservation, 103 AD3d 1006, 1007 [2013], Iv denied 21 NY3d 862 [2013]). Petitioners must have more than “[generalized environmental concerns” to satisfy that burden and, unlike in cases involving zoning issues, “there is no presumption of standing to raise a SEQRA [or other environmental] challenge based on a party’s close proximity alone” (Matter of Save Our Main St. Bldgs, v Greene County Legislature, 293 AD2d 907, 908 [2002], Iv denied 98 NY2d 609 [2002]; see Matter of Shapiro v Torres, 153 AD3d 835, 836 [2017]). Moreover, “[t]he injury in fact element must be based on more than conjecture or speculation” (Matter of Animal Legal Defense Fund, Inc. v Aubertine, 119 AD3d 1202, 1203 [2014]). Standing rules are not applied “in an overly restrictive manner” that will “completely shield a particular action from judicial review” (Matter of Association for a Better Long Is., Inc. v New York State Dept. of Envtl. Conservation, 23 NY3d at 6), however, and we will “deem the allegations in the petition [/complaint] to be true and construe them in the light most favorable to the petitioner [s]” in assessing whether a sufficiently precise injury has been articulated (Matter of Town of Amsterdam v Amsterdam Indus. Dev. Agency, 95 AD3d 1539, 1541 n 3 [2012]; see Matter of Powers v De Groodt, 43 AD3d 509, 512 [2007]).
 

 Supreme Court determined, and we agree, that petitioner Black Rock Fish and Game Club of Cornwall, Inc. in proceeding No. 1, as well as the proceeding No. 2 petitioners, lacked standing. All of those petitioners are organizations who alleged that the approved water withdrawal might deplete ground water in the area to the extent that “water-dependent natural resources,” such as the nearby Woodbury Creek, will be impacted. Accepting those allegations at face value — and assuming that these petitioners either did, or did not need to, articulate grounds for organizational standing (see New York State Assn, of Nurse Anesthetists v Novello, 2 NY3d 207, 211 [2004]) — the harm is “no different in kind or degree from that suffered by the general public in the vicinity . . . and [does] not confer standing” (Matter of Powers v De Groodt, 43 AD3d at 513; see Matter of Save the Pine Bush, Inc. v Planning Bd. of Town of Clifton Park, 50 AD3d 1296, 1297-1298 [2008], lv denied 10 NY3d 716 [2008]; Matter of Buerger v Town of Grafton, 235 AD2d 984, 985 [1997], Iv denied 89 NY2d 816 [1997]). Accordingly, Supreme Court properly dismissed proceeding No. 1 with regard to Black Rock Fish and Game Club of Cornwall, Inc. and proceeding No. 2 in its entirety, on standing grounds.
 

 The remaining proceeding No. 1 petitioners — including, contrary to the conclusion of Supreme Court, petitioners Henry N. Christensen Jr., Susan Webber Christensen and Sevinch Bridges — had standing. An impact upon a nearby landowner’s water supply constitutes an injury specific enough to confer standing to challenge the action that caused it (see ECL 15-1503 [2] [c], [f]; Matter of Humane Socy. of U.S. v Empire State Dev. Corp., 53 AD3d 1013, 1017 [2008], Iv denied 12 NY3d 701 [2009]; Matter of Many v Village of Sharon Springs Bd. of Trustees, 218 AD2d 845, 845-846 [1995]), and that is precisely the type of injury the neighbors allege the Mountainville well will cause to their private wells. They further submitted the affidavit of a hydrogeologist in support of their claims, who opined that there was not “sufficient data available” to justify DEC’s lack of concern as to the “potential” threat. The neighbors therefore “asserted a concrete interest in the matter [DEC] is regulating, and a concrete injury from the agency’s failure to follow procedure” sufficient to confer standing (Matter of Association for a Better Long Is., Inc. v New York State Dept. of Envtl. Conservation, 23 NY3d at 7). The municipalities made similar allegations that the approved use of the Mountainville well will either affect the use of ground water in that area for municipal water supplies or impact residents who may suffer impacts to their private wells as a result of the withdrawal. Inasmuch as these allegations show “how [the municipalities’] personal or property rights, either personally or in a representative capacity, will be directly and specifically affected apart from any damage suffered by the public at large, and [how they] will suffer an injury that is environmental and not solely economic in nature,” they also have standing (Matter of Town of Amsterdam v Amsterdam Indus. Dev. Agency, 95 AD3d at 1541 [internal quotation marks and citations omitted]; see Matter of Village of Canajoharie v Planning Bd. of Town of Florida, 63 AD3d 1498, 1501 [2009]).
 

 As the bulk of the proceeding No. 1 petitioners have standing, we turn to the merits of the arguments therein.
 
 [2]
 
 Initially, while we do not agree with its stated rationale, Supreme Court was correct in dismissing the claims in proceeding No. 1 relating to the SEQRA determination rendered by the Village Board. There is no question that a challenge to the SEQRA determination itself is time-barred since it was issued in 2012 and, regardless of how the proceeding No. 1 petitioners style their claims, “[a] four-month statute of limitations is applicable to allegations of SEQRA violations” (Matter of Eadie v Town Bd. of Town of N. Greenbush, 22 AD3d 1025, 1027 [2005], affd 7 NY3d 306 [2006]; see CPLR 217 [1]; Chase v Board of Educ. of Roxbury Cent. School Dist., 188 AD2d 192, 195 [1993]). The proceeding No. 1 petitioners attempt to avoid this problem by arguing that they are not challenging the initial 2012 SEQRA determination, but rather the later refusal to reopen the SEQRA review process when changes in circumstances gave rise to potential significant adverse environmental impacts arising from the development of the Mountainville site (see 6 NYCRR 617.7 [f]). Kiryas Joel made clear no later than July 15, 2015 that it perceived nothing that would require “further re-consideration” under SEQRA, however, and proceeding No. 1 was not commenced until November 27, 2015. Therefore, to the extent that refusal constituted a new determination capable of review (see Matter of Boyles v Town Bd. of Town of Bethlehem, 21 & AD2d 688, 691 [2000]), the attacks against it were untimely.
 

 As for the arguments surrounding the issuance of the water withdrawal permit, DEC did not abuse its discretion in concluding that an adjudicatory hearing on the permit application was unnecessary. Kiryas Joel retained a groundwater and environmental engineering firm to assess the Mountainville site and conduct a 72-hour water pumping test. The test was conducted in 2011 and found “stabilized yield and water-level drawdown at [the] pumping rate” sought in the permit application. DEC then conducted a legislative hearing where it heard public comments on the permit application, after which it expressly found that the pump test had complied with the recommended procedures and that the proposed well would “safely yield the proposed . . . withdrawal amount . . . without interference impacts on sources of other users.” DEC further found that many of the concerns raised in the public comments involved issues irrelevant to the permitting process and that relevant concerns, including potential impacts on nearby surface waters and other users of the aquifer, were either entirely illusory or could be addressed if monitoring disclosed them. Indeed, DEC addressed the concerns of commenters without placing any major restrictions on the permitted water withdrawal, ensuring that any negative impacts of the water withdrawal would be detected by monitoring and addressed (see ECL 70-0119 [1]; 6 NYCRR 621.8 [b]; 624.4 [c] [3]; Matter of Riverkeeper, Inc. v New York State Dept. of Envtl. Conservation, 152 AD3d 1016, 1018 [2017]).
 
 [3]
 
 Therefore, mindful that “our role is not to ‘reweigh the factors and substitute [our] judgment for that of ” DEC, we cannot say that its refusal to conduct an adjudicatory hearing was arbitrary and capricious (Matter of Eastern Niagara Project Power Alliance v New York State Dept. of Envtl. Conservation, 42 AD3d 857, 861 [2007], quoting Matter of Gallo v State of N.Y., Off. of Mental Retardation & Dev. Disabilities, 37 AD3d 984, 985 [2007]; see Matter of Riverkeeper, Inc. v New York State Dept. of Envtl. Conservation, 152 AD3d at 1018).
 
 [4]
 

 DEC was authorized to grant a permit after analyzing the factors set forth in ECL 15-1503 and “suitably explained” that analysis in a written response to comments by the public and rejoinders by Kiryas Joel made after the legislative hearing on the permit application (Matter of Hudson Riv. Fisherman’s Assn, v Williams, 139 AD2d 234, 240 [1988]). After reviewing the record ourselves, we are satisfied that a rational basis supported the issuance of the permit (see id. at 238). DEC reviewed the significant documentation submitted with the application, conducting a public hearing and considered both the submitted comments and the responses offered by Kiryas Joel. DEC largely agreed with Kiryas Joel’s responses and, indeed, “accept [ed] and incorporate [d]” the bulk of them into its own responses.
 

 Kiryas Joel described the efforts it had made to conserve water, efforts that had resulted in major reductions in water usage and which it intended to continue, but it simply would not have an adequate municipal water supply without developing a new source of water (see ECL 15-1503 [2] [e], [g]). Kiryas Joel explained that, notwithstanding the spectral suspicions of perfidy on the part of the proceeding No. 1 petitioners, it intended to complete construction of the aqueduct pipeline and use water from the aqueduct. DEC acknowledged the existence of the aqueduct as required under ECL 15-1503 (2) (a), but noted that it did not have jurisdiction over Kiryas Joel’s connection to that source. Even if Kiryas Joel had abandoned that plan, however, it provided data showing how, in conjunction with its already permitted wells elsewhere, drawing water from the Mountainville site could satisfy the maximum peak daily demand for municipal water for the foreseeable future (see ECL 15-1503 [2] [a], [b]; 6 NYCRR 601.11 [c] [1], [2]). The limits placed on the daily water withdrawal ensured that the needs of Kiryas Joel, which it detailed, would be met without excess (see ECL 15-1503 [2] [e]). DEC further cited the pump test — which it noted had been “conducted and reported in a scientifically rigorous manner” that produced valid conclusions — to determine that the proposed maximum daily water withdrawal would have no impact upon the water supply of others and would not harm the aquifer or other natural resources (see ECL 15-1503 [2] [c], [f]).
 

 Kiryas Joel lastly represented, and DEC found no reason to doubt, that the proposed use would comply with other applicable agreements and laws (see ECL 15-1503 [2] [h]). The proceeding No. 1 petitioners and others submitted evidence in an effort to call the data and expert analysis provided by Kiryas Joel into question, but we accord “great weight and judicial deference” to the technical and factual judgment of DEC that the latter was reliable (Flacke v Onondaga Landfill Sys., 69 NY2d 355, 363 [1987]; see Matter of Grade Point Community Council v New York State Dept. of Envtl. Conservation, 92 AD3d 123, 129 [2011], lv denied 19 NY3d 807 [2012]). DEC accordingly determined, and rationally so, that the statutory factors supported granting the water withdrawal permit with conditions. We, as a result, will not disturb its decision to do so.
 

 To the extent that petitioners’ remaining arguments are not academic in light of the foregoing, we have examined them and found them to be meritless.
 

 McCarthy, J.P., Egan Jr. and Lynch, JJ., concur.
 

 Ordered that the judgment is affirmed, without costs.
 

 [1]
 

 . This Court granted a preliminary injunction pending the outcome of these appeals (2017 NY Slip Op 74402[U]).
 

 [2]
 

 . The proceeding No. 1 petitioners cross-moved for summary judgment before Kiryas Joel and the Village Board served an answer and, having “charted their own procedural course,” they will not be heard to complain that Supreme Court erred in reaching the merits of their claims (Becher v Feller, 64 AD3d 672, 676-677 [2009] [internal quotation marks and citation omitted]; see Erie Ins. Group v National Grange Mut. Ins. Co., 63 AD3d 1412, 1414 n 2 [2009]).
 

 [3]
 

 . Kiryas Joel was required to implement a “monitoring and action plan” for the Woodbury Creek and have approved mitigation measures ready in the event that the water withdrawal caused “a significant lowering of Woodbury Creek water levels.” It was further directed to “provide an adequate supply of water” to any “residents whose private drinking water wells are significantly diminished or rendered non-productive by the” approved withdrawal.
 

 [4]
 

 . According deference to the conclusion of DEC that none of the public comments raised “substantive and significant issues” that might “result in denial of the permit application, or the imposition of significant conditions thereon” (6 NYCRR 621.8 [b]), there was no legal requirement to hold an adjudicatory hearing. The legislative hearing provided a sufficient opportunity to be heard under these circumstances, and an adjudicatory hearing was not required as a matter of due process (see Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753, 757 [1991]; Matter of Akshar v Mills, 249 AD2d 786, 787-788 [1998], lv dismissed 92 NY2d 962 [1998]).